UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RUFUS L. LYNCH,

    Plaintiff,

v.               Case No. 08-CV-554

FLOWERS FOODS SPECIALTY GROUP,
GEORGE E. DEESE,
CANTEEN CORRECTIONAL SERVICES,
COMPASS GROUP USA, INC.,
d/b/a Canteen Correctional Services,
FLOWERS BAKERY OF LONDON, and
FLOWERS FOODS, INC.,

    Defendants.

# ORDER

The plaintiff, Rufus Lynch, a Wisconsin state prisoner, is proceeding *pro se* on claims against the defendants. This matter is before the court on the parties' motions for summary judgment.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**FACTUAL BACKGROUND**

The plaintiff, Rufus Lynch, is a Wisconsin state prisoner who was housed at the Wisconsin Resource Center (WRC) at all times relevant to the complaint. On July 31, 2007, the plaintiff purchased ten Mrs. Freshley's Grand Honey Buns from Canteen Correctional Services, a name under which defendant Compass Group USA, Inc., does business. The plaintiff asserts that the honey buns are made by defendant Flowers Bakery of London, a subsidiary of Flowers Foods, Inc., and are distributed by defendant Flowers Foods Specialty Group.

2

On August 6, 2007, the plaintiff opened one of the honey buns and began to eat it. At the time, the plaintiff was retrieving his mail from the staff desk. When he took his second bite of the honey bun, the plaintiff started choking/coughing and spit the honey bun out on the floor. He also was holding his throat and bleeding from his mouth. The plaintiff, along with unit staff, inspected the honey bun and retrieved a small jagged shard of metal from the honey bun. The sharp jagged metal object cut the plaintiff's tongue. He received medical attention from a nurse the same day. The nurse gave the plaintiff a tetanus booster shot and a cream for his tongue. He also was told he needed to see the doctor and would be scheduled, but he was transferred from the WRC before he was seen.

On August 14, 2007, the plaintiff filed an inmate complaint (WRC-2007-24026) regarding the incident. The plaintiff was transferred to another prison two days later, but he received the response rejecting the complaint at his new institution. The plaintiff appealed the rejected complaint to the warden, who affirmed the rejection of the complaint.

The plaintiff's tongue continues to be numb with loss of feeling and taste in the area that was injured. The plaintiff also still has pain in his mouth and tongue, as well as headaches. Additionally, the plaintiff is mentally and emotionally scarred from the incident and has problems eating. His fear of eating is so intense that he now crumbles up and dissects food due to fear of future injury, or death.

## DISCUSSION

**I.     Pending Motions**

The parties have filed a number of dispositive motions in this case, each of which will be addressed in turn.

On September 23, 2010, defendants George E. Deese, Flowers Bakery of London, and Flowers Foods Specialty Group ("Flowers Defendants") filed a motion for partial summary judgment. In this motion, the Flowers Defendants seek dismissal with prejudice of the plaintiff's claims against defendant George E. Deese. They submit that there is no evidence that Deese has acted in an individual capacity rather than as an agent of the corporate defendants named in this case.

Defendant Compass Group USA, Inc., (Canteen), which did business as Canteen Correctional Services, filed a motion for summary judgment on September 24, 2010. Also on September 24, 2010, the Flowers Defendants filed two more motions for summary judgment. In both motions, the Flowers Defendants adopt the brief and arguments advanced by Canteen. However, the second motion has more detail identifying Canteen's filings and arguments regarding the plaintiff's claims. Because the Second Motion for Summary Judgment filed on September 24, 2010, by the Flowers Defendants supersedes the first motion for summary judgment filed that day and seeks the same relief, the first motion (Docket #104) will be denied.

Additionally, on January 3, 2011, the plaintiff filed a motion for partial summary judgment and motion for order denying defendant's motion for summary judgment.

As part of this motion, the plaintiff seeks to voluntarily dismiss Deese as a defendant in this action and his contract claim. Although the plaintiff uses the term "voluntarily dismiss," he has abandoned his claims against Deese and his contract claim, and summary judgment in defendants' favor is proper as to Deese and the contract claim. *See, e.g., Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived); *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 624 n. 3 (7th Cir. 2001) (same).

Thus, what remains is Canteen's motion for summary judgment, joined by the second motion for summary judgment filed by the Flowers Defendants on September 24, 2010, as well as the remainder of the plaintiff's motion for summary judgment.

The defendants submit that they are entitled to summary judgment because: (1) there is no subject matter jurisdiction because the amount in controversy does not exceed $75,000; (2) the plaintiff failed to exhaust his administrative remedies; (3) the plaintiff's claims for compensatory and punitive damages are barred by 42 U.S.C. § 1997e(e); (4) the plaintiff's negligence claim fails as a matter of law; and (5) the plaintiff's breach of contract claim is unsound.[1]

In response, the plaintiff submits that he exceeds the amount in controversy required for diversity jurisdiction under 28 U.S.C. § 1332. He also maintains that this

---

[1] As discussed above, the court will grant summary judgment in favor of the defendants on the plaintiff's contract claim.

action does not constitute a prison case and, therefore, the PLRA's rules regarding exhaustion and damages do not apply, though he does contend he fully exhausted his claims. The plaintiff further submits that he has proven his negligence claim against the defendants. He even suggests that negligence *per se* should apply to this situation.

## II. Subject Matter Jurisdiction

In order to support diversity jurisdiction under 28 U.S.C. § 1332, two basic requirements must be satisfied: (1) complete diversity of citizenship between the plaintiffs and the defendants; and (2) the proper amount in controversy (more than $75,000). *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 881 (7th Cir. 2001). The defendants concede for the purposes of summary judgment that there is complete diversity of citizenship. However, they challenge the plaintiff's allegations with respect to the proper jurisdictional amount at stake. To satisfy diversity jurisdiction, the plaintiff must demonstrate no more than good faith, a minimally reasonable belief that his complaint will result in a judgment in excess of $75,000. *Id.*

The plaintiff has claimed damages of at least $350,000. "When the complaint includes a number, it controls unless recovering that amount would be legally impossible." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)).

This case is distinguishable from those cited by the defendants. In *Anthony v. Security Pacific Fin. Serv. Inc.*, 75 F.3d 311, 315-16 (7th Cir. 1996), each plaintiff

6

relied on punitive damages to exceed the jurisdictional limit but, under state law, no circumstances existed pursuant to which the plaintiffs could recover punitive damages for their claims. Therefore, it would be legally impossible for each plaintiff to exceed the amount in controversy requirement. *Id.* at 317.

Similarly, in *Kingsley v. Huf North America Automotive Parts Mfg. Corp.*, No. 08-cv-0946, 2009 WL 1444136, at *5 (E.D. Wis. May 21, 2009), the dismissal of a statutory claim left only a contractual claim worth $30,000, less than the statutory limit. Although "events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction," *St. Paul Mercury Indem. Co.*, 303 U.S. at 290, it is not a subsequent event when a court finds, on the face of the pleadings, that one of the plaintiff's claims is deficient. *Kingsley*, 2009 WL 1444136, *5.

In this case, if a fact finder determines that the plaintiff does in fact have a permanent injury that includes numbness, loss of taste in his tongue and headaches, the damages could exceed $75,000. Additionally, the plaintiff has alleged punitive damages. While it is unlikely that the plaintiff will recover more than $75,000 in this case, if anything at all, the court at this stage cannot say to a legal certainty that the plaintiff's claim is for less than the statutorily required amount. *See Rising-Moore*, 435 F.3d at 815.

**III.   Exhaustion**

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). The parties dispute whether the PLRA's rules regarding exhaustion apply to this case. In any event, the plaintiff maintains that he fully exhausted his claims.

The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 126 S.Ct. 2378, 2384, 2387 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require").

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). Inmates must exhaust all administrative remedies that the DOC has promulgated by rule before they may commence a civil action or special proceeding against an officer, employee or agent of the DOC in that person's official or individual capacity. Wis. Admin. Code § DOC 310.05.  The defendants in this case are not officers,

employees, or agents of the DOC, rendering the ICRS inapplicable to the plaintiff's claims against them.

The defendants erroneously argue that the plaintiff's Amended Complaint is fatally flawed and that they are entitled to summary judgment on the plaintiff's claims because the plaintiff did not plead exhaustion of the administrative remedies available to him. However, exhaustion is an affirmative defense and it is a defendant's burden to establish that a plaintiff has failed to exhaust administrative remedies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

**IV.  Damages**

The defendants also contend that the plaintiff's claims for compensatory and punitive damages are barred by 42 U.S.C. § 1997e(e). First, they maintain that the plaintiff failed to allege – and cannot prove – more than *de minimis* physical injuries. Second, the defendants argue that the PLRA bars the plaintiff's request for punitive damages both because he has not alleged or proven more than *de minimis* physical injuries and because he has not alleged the requisite evil intent or reckless disregard necessary to recover punitive damages.

Section 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The plaintiff submits that the PLRA does not apply to this action, but he relies on the reference to "prison conditions" in § 1997e(a), which requires exhaustion, and

9

the definition of "civil action with respect to prison conditions" found elsewhere in the PLRA, at 18 U.S.C. §3626(g)(2). However, § 1997e(e), with respect to damages available for mental or emotional injury suffered while in custody, does not contain the same language regarding "prison conditions."

Nevertheless, the PLRA does not require objective evidence of physical injury. The Supreme Court has stated that in order to survive summary judgment, the plaintiff must show some injury, and that no "serious injury is required." *Hudson v. McMillan*, 503 U.S. 1, 6-8 (1992). The plaintiff avers that he was bleeding from the mouth and tongue after biting into the honey bun with the jagged shard of metal. He received medical treatment, including a tetanus booster shot and cream. He also was told that he needed to see a doctor and would be scheduled, but he was transferred before he could be seen. Additionally, the plaintiff avers that he has ongoing numbness and loss of taste in his tongue, as well as headaches. Viewing the evidence in the light most favorable to the plaintiff, the record contains evidence of a more than *de minimis* physical injury.

The court will consider the defendants' argument that the plaintiff has not alleged the requisite evil intent or reckless disregard necessary to recover punitive damages in conjunction with its analysis of the plaintiff's negligence claim below, if such an analysis is necessary.

## V. Negligence

The plaintiff was allowed to proceed against the defendants on claims that they were negligent regarding their respective roles in the making, packaging, distribution, and sale of the honey bun that injured the plaintiff. To succeed on a negligence claim under Wisconsin law, "there must exist: (1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 531, 247 N.W.2d 132 (1976).

The defendants submit that the plaintiff's negligence claim fails as a matter of law, but the plaintiff argues that he has proven his negligence claim against the defendants and even suggests that negligence per se should apply to this situation.

### A. Negligence Per Se

The court will first consider whether negligence per se applies in this case. The plaintiff bases his assertion of negligence per se on Wis. Stat. §§ 97.02 and 97.10, as well as the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 et seq., specifically § 331.

> Wisconsin case law has articulated a framework for analyzing whether a given statutory rule violation provides a basis for imposing civil liability. Negligence per se will be found to exist if all three of the questions are answered affirmatively: (1) Was the harm inflicted the type the statute was designed to prevent, (2) was the person injured within the class of persons sought to be protected, and (3) is there some expression of legislative intent that the statute become a basis for the imposition of civil liability.

11

Stuart v. Weisflog's Showroom Gallery, Inc., 2006 WI App 109, ¶23, 293 Wis.2d 668, 721 N.W.2d 127.

Chapter 97 of the Wisconsin Statutes is entitled Food Regulation. Section 97.02 defines "adulterated food," and § 97.10 sets forth "prohibited acts" regarding adulterated food. Enforcement of Chapter 97 is entrusted to the Department of Agriculture, Trade and Consumer Protection under § 97.12, and violations of the department's orders are punishable by fines and/or imprisonment of not more than one year in the county jail. There is no authorization in Chapter 97 for private civil suits such as this to enforce its provisions. Similarly, the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 et seq., is also a statute with criminal enforcement provisions and no expression of legislative intent that the statute become the basis for imposition of civil liability. Because the third question cannot be answered in the affirmative for either statute, negligence per se cannot be found to exist. *See Stuart*, 2006 WI App 109, ¶23.

    **B.    Canteen**

Canteen submits that the plaintiff's negligence claim against it fails because: "(1) Canteen did not owe a duty to protect the prisoner plaintiff from the type of unforeseeable harm alleged; (2) even if Canteen somehow owed a duty to the prisoner plaintiff under the unforeseeable circumstances alleged, Canteen did not breach that duty; (3) Canteen's conduct did not constitute a 'substantial factor' in the cause of the prisoner plaintiff's alleged injuries, which were *de minimis* in any event;

12

and (4) public policy considerations preclude a finding of liability." (Memorandum of Law in Support of Defendant Compass Group USA, Inc.'s Motion for Summary Judgment, p. 10).

Canteen maintains that it is not obligated to protect the plaintiff under the isolated and unforeseeable circumstances alleged and that they are subject to no greater standard of care than owed by the prisoner plaintiff's custodians or ordinary retailers. Canteen further submits that it did not manufacture the honey bun at issue and, because of its prepackaged nature, did not have an opportunity to inspect the honey bun in any practical manner without destroying its fitness for human consumption. Canteen simply delivered the prepackaged honey bun to the WRC in a pack and ship fashion without any contact with the plaintiff.

In response to the motion for summary judgment, the plaintiff's only assertion of negligence with regard to Canteen is that it does not have an x-ray machine to examine or assure that the food items bought and sold by them are safe for human consumption. However, the plaintiff cannot show that this is a requirement for the distribution of packaged food items. In fact, many consumers might object to the routine and/or repeated use of an x-ray machine on food products they buy.

Even assuming that Canteen has a general duty to distribute food items that do not have metal embedded in them and that they somehow breached that duty by not scanning the honey buns they distribute with an x-ray machine, such a failure to x-ray the product could not constitute a "substantial factor" in causing the plaintiff's

harm. "Causation in Wisconsin exists where the defendant's negligence was a substantial factor in producing the plaintiff's harm." *Fischer v. Ganju*, 168 Wis. 2d 834, 857, 485 N.W.2d 10 (Wis. 1992). To be a "substantial factor," a defendant's conduct must have "such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in that popular sense." *Id.* That is not the case with regard to Canteen, even when the evidence is viewed in the light most favorable to the plaintiff. Given the prepackaged nature of the honey bun, Canteen had no reason to know or anticipate that the honey bun purportedly contained metal deep inside. A reasonable fact finder could not conclude that Canteen's failure to x-ray the honey buns it distributes, when there was no legal requirement to do so, was the cause of metal embedded in one particular honey bun eventually purchased by the plaintiff.

Moreover, even if the plaintiff could convince a fact finder that Canteen was negligent, the court agrees with Canteen's argument that public policy considerations preclude liability under the circumstances alleged. The Wisconsin Supreme Court has articulated six public policy factors that Wisconsin courts use today to limit liability in negligence claims:

> (1) the injury is too remote from the negligence; (2) the recovery is wholly out of proportion with the culpability of the negligent tort-feasor; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery would place too unreasonable a burden on the negligent tort-feasor; (5) recovery would be too likely to open the way to fraudulent claims; and (6) recovery would enter into a field that has no sensible or just stopping point.

14

*Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 29, 318 Wis.2d 622, 768 N.W.2d 568 (internal citations and quotations omitted).

Canteen contends that grounds (2), (4) and (5) weigh heavily against a finding of liability in this case. Where a party is simply a distributor of a prepackaged food product, it would be too great a burden to place on that party to anticipate and/or detect a foreign object within the product. Any recovery by the plaintiff from Canteen would be out of proportion with its culpability, would place too unreasonable a burden on Canteen and would open the way to fraudulent claims against distributors.

For all of these reasons, the court will grant Canteen's motion for summary judgment. It follows that, viewing the evidence in the light most favorable to the defendants, the plaintiff is not entitled to summary judgment.

### C. Flowers Defendants

As previously noted, the Flowers Defendants joined in Canteen's motion for summary judgment and did not file separate briefs, affidavits or proposed finding of fact. In response to the motion for summary judgment, the plaintiff asserts that the Flowers Defendants have had notice of foreign objects found in their honey buns before and, therefore, they should have known that a better procedure or inspection process needed to be implemented. He further argues that because the Flowers Defendants had knowledge of the flaws in their x-ray machines or examination process that failed to detect foreign objects in their honey buns, they should have

foreseen that this flaw would cause injury to a consumer, yet they continued to make, sell and distribute the product.

The Flowers Defendants have presented evidence that all of their food items pass through a metal detector prior to being shipped and that the metal detectors have standard calibrations that determine what size metal they will accept or reject. The Food and Drug Administration standard regarding metal detection is 7mm, but the Flowers Defendants used a stricter standard. Additionally, the food items are inspected multiple times through the production process.

The Flowers Defendants also submit that the plaintiff has produced no proof that the piece of metal was in the honey bun at any time prior to when he bit into it. They suggest that, if the metal was embedded in the honey bun at all, it found its way there after passing through the metal detector and leaving their facility.

Finally, the Flowers Defendants contend that they have had no prior instances of metal being found in any of their baked products, including honey buns. The court notes that none of the customer complaints produced by the plaintiff dealt with metal being found in a honey bun. Additionally, the court notes that they are all dated after the plaintiff was allegedly injured by a shard of metal in his honey bun, undermining the plaintiff's prior notice arguments.

The evidence the court is left to consider is that the defendants sent the honey bun in question through a metal detector before it left its facility. Even if the shard of metal was already embedded in the honey bun and somehow got through the

inspection process, there is no evidence to suggest that the process was flawed or caused the plaintiff's subsequent injuries. Thus, even viewing the evidence in the light most favorable to the plaintiff, the Flowers Defendants did not breach any duty to the plaintiff when they manufactured the honey bun, inspected it multiple times during production and then passed it through a metal detector before it left the facility. Without any evidence of a breach of duty, the plaintiff cannot succeed on his negligence claim against the Flowers Defendants. The court will grant the Flowers Defendants' motion for summary judgment. Again, it follows from that conclusion that the plaintiff is not entitled to summary judgment. His motion for partial summary judgment will be denied.

Accordingly,

**IT IS ORDERED** that the motion for partial summary judgment by George E. Deese, Flowers Bakery of London, and Flowers Foods Specialty Group (Docket #97) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Compass Group USA, Inc.'s motion for summary judgment (Docket #98) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment by George E. Deese, Flowers Bakery of London, and Flowers Foods Specialty Group (Docket #104) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the second motion for summary judgment by George E. Deese, Flowers Bakery of London, and Flowers Foods Specialty Group (Docket #105) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for partial summary judgment and motion for order denying defendant's motion for summary judgment (Docket #115) be and the same is hereby **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2011.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge